UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00457-MR

| SHALOM SCOTT, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF DECISION AND ORDER** |
| CURTISHA WATSON, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 27] and Defendant's Motion to Strike Surreply [Doc. 40].

**I.    PROCEDURAL BACKGROUND**

Pro se Plaintiff Shalom Scott ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while he was held as a pretrial detainee at Mecklenburg County Jail (the "Jail"). Plaintiff named Curtisha Watson and J. Caldwell, both identified as Disciplinary Hearing Officers employed by the Mecklenburg County Sheriff's Office, as Defendants in this matter. [Doc. 1 at 3]. Plaintiff alleges that he was housed in the Jail's Disciplinary Detention Unit (DDU) for 19 days past the date he was scheduled to be released to the regular population. [Id. at 6-7]. Plaintiff

does not allege whether his claims are brought against these Defendants in their individual or official capacities or both.  Plaintiff seeks $522,500.00 in monetary relief for these 19 days.  [Id. at 4].

On initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court allowed Plaintiff's substantive due process claim under the Fourteenth Amendment to proceed but dismissed Plaintiff's equal protection claim and claim based on the denial of medical attention.  The Court also dismissed Defendant Caldwell for Plaintiff's failure to state a claim against him.  [Doc. 11].  The Court allowed Plaintiff's claims for excessive punishment, deliberate indifference, and gross negligence to proceed based on the Court's ruling regarding the due process claim.  [Id. at n. 2].

On April 15, 2021, Defendant Watson moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.  [Doc. 27].  In support of her summary judgment motion, Defendant submitted a memorandum, her own Declaration, the Declaration of Rejoy Mathew, Plaintiff's disciplinary hearing records, and Plaintiff's Case Notes.  [Docs. 28, 28-1 through 28-7].

On April 19, 2021, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of

2

Case 3:20-cv-00457-MR   Document 41   Filed 12/06/21   Page 2 of 16

the manner in which evidence could be submitted to the Court. [Doc. 30]. In his timely response to Defendant's motion, Plaintiff submitted a memorandum; his own affidavit and the Affidavits of Shamaur Patterson-Moses and David Parker. [Docs. 37, 37-1]. Defendant replied [Doc. 38] and Plaintiff filed an unauthorized surreply [Doc. 39], which the Court will strike on Defendant's motion [Doc. 40].

The matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 Fed. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken

4

Case 3:20-cv-00457-MR   Document 41   Filed 12/06/21   Page 4 of 16


as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

On November 5, 2019, a "shakedown" was conducted at the Jail. [Doc. 37-1 at 3: Scott Aff.]. During the shakedown, Plaintiff was found in possession of a homemade weapon for which he was charged with three infractions, including weapon possession, making/smuggling of weapons, and possession of contraband. [Id.; Doc. 28-3 at 2]. At the relevant times, Defendant Watson was working as a Disciplinary Hearing Officer (DHO) at the Jail. [Doc. 28-2 at ¶ 2: Watson Dec.]. Her duties included reviewing written allegations of misconduct against residents of the Jail and conducting disciplinary hearings with those residents. [Id.]. On November 12, 2019, Defendant Watson conducted a disciplinary hearing with Plaintiff and found him guilty of making/smuggling of weapons. [Id. at ¶ 3]. As a result, Plaintiff was assigned to the DDU for 60 days. [Doc. 28-4 at 2]. His scheduled release date, therefore, was January 11, 2020. [Doc. 28-2 at ¶ 5]. Plaintiff

attests that after his hearing Defendant Watson gave Plaintiff his hearing report on which the release date was left blank. [Doc. 37-1 at 3].

Plaintiff was placed in single cell confinement in the DDU. [Doc. 28-2 at ¶ 6]. As a DDU resident, he received one hour of recreation time Monday through Friday. He was allowed to call his attorney on Wednesday and Friday and allowed to shave on Tuesday, Thursday, and Sunday evenings. He was able to receive mail and to have attorney visits. He was not allowed to receive books from the library or to participate in resident programs unless authorized by the facility commander. Finally, as a DDU resident, Plaintiff did not have commissary privileges. [Id.].

On January 9, 2020, two days before Plaintiff was to be released from the DDU, Officer Rejoy Mathew made a false report about Plaintiff. [Doc. 37-1 at 3-4]. In the false report, Officer Mathew claimed that Plaintiff threatened him after Plaintiff asked about his recreation time and Officer Mathew told Plaintiff that he would have to wait his turn. Officer Mathew reported that Plaintiff "showed Officer Mathew his knuckles and said you will get this." Plaintiff also reportedly said he would use his contact glass to pick the lock and fight Officer Mathew and that he, Plaintiff, "[didn't] care" about the consequences. [Doc. 28-5 at 2; see Doc. 28-6 at ¶ 8]. Officer Mathew

informed his colleague, Officer D. Williams, about the encounter and Officer Williams noted it in Plaintiff's Case Notes. [Doc. 28-6 at ¶ 9].

Plaintiff admits that he had an encounter with Officer Mathew that day, but claims it was of an entirely different character. Plaintiff attests that when Officer Mathew was making rounds after breakfast that day, Mathew stopped at Plaintiff's cell door, watched Plaintiff wash himself at his sink, and made an "inapropriate [sic] homosexual comment" toward Plaintiff. [Doc. 37-1 at 4]. Plaintiff told Mathew to get away from his cell and that he would report Mathew under the PREA.[1] Officer Mathew perceived this as a threat and left. [Doc. 37-1 at 4].

Regardless of who is telling the truth, Officer Williams noted Officer Mathew's version of the encounter in Plaintiff's Case Notes. [See Doc. 28-5 at 2]. Prior to Plaintiff's release from DDU, Defendant Watson was informed that Plaintiff had threatened to escape from his cell and to assault Officer Mathew. [Doc. 28-2 at ¶ 7]. Defendant Watson reviewed Officer Mathew's allegedly false version of the encounter in Plaintiff's Case Notes. [Id.]. Although Plaintiff was not charged with another disciplinary offense after

---

[1] PREA stands for the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

7

threatening Officer Mathew, Plaintiff was not released from DDU until January 30, 2020. [Id. at ¶ 8]. Defendant Watson attests that Plaintiff remained in single cell confinement for these additional 19 days to ensure the safety and security of the Jail staff, including Officer Mathew, and of the other Jail residents. [Id.]. Specifically, Defendant Watson attests that releasing Plaintiff so soon after he threatened Officer Mathew implicated security concerns. [Id.].

Plaintiff attests that during his time in the DDU he had no issues with officers about recreation time and had been detained at the Jail for over three years without any threats toward staff or anyone else. [Doc. 37-1 at 4]. Plaintiff also claims that Defendant Watson is not an administrator and had "no authority" to extend Plaintiff's release date without process and that Officer Mathew "is known for his homosexual behavior towards inmates and his nickpicking [*sic*] to try to provoke inmates." [Doc. 37-1 at 4-5]. Fellow Jail resident Shamou Patterson Moses attests that he "[has] been picked on by Officer Mathew a few times. [Mathew] has locked [him] down and written me [him] by lying on [him.]" Moses also attests Officer Mathew likes to stare at inmates in their rooms while they are "handleing their personal buisness." [Doc. 37-1 at 1: Moses Aff. (errors uncorrected)].

8

Case 3:20-cv-00457-MR   Document 41   Filed 12/06/21   Page 8 of 16

## IV. DISCUSSION

Plaintiff claims that Defendant Watson violated his substantive due process rights under the Fourteenth Amendment by holding him in the DDU for 19 days longer than his ordered DDU release date. Defendant Watson argues that she is entitled to summary judgment because Plaintiff's substantive due process, excessive punishment, and deliberate indifference claims fail because Plaintiff was not punished by the additional 19 days in the DDU; because Defendant is entitled to qualified immunity; and because public official immunity bars Plaintiff's negligence claim. [Doc. 28 at 2]. Defendant does not address the issue of sovereign immunity.

### A. Sovereign Immunity

To the extent Plaintiff intended to sue Defendant Watson in her official capacity, the Court addresses the issue. McRay v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.") (citation omitted).

A suit against a state official in his official capacity, however, is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C.

§ 1983.  Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).  Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts.  See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 343 (1979).  Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983.  See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina).  As such, Defendant Watson is entitled to summary judgment on the Plaintiff's claim against her to the extent he sought to sue her in her official capacity.

## B. Substantive Due Process

A pretrial detainee has a right under the Fourteenth Amendment to be free from punishment before his guilt is adjudicated.  Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979).  However, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"

Id. at 539, 99 S. Ct. at 1874. In this regard, officials "must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540, 99 S. Ct. at 1874-75. "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Id. at 539, 99 S. Ct. at 1874 (citation omitted).

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, <u>in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters</u>." Pell v. Procunier, 417 U.S. at 827, 94 S. Ct. at 2806. (Other citations omitted).

Id. at 540-41 n. 23, 99 S. Ct. at 1875 n. 23 (emphasis added).

11

In the Fourth Circuit, a pretrial detainee may raise a substantive due process challenge to conditions of confinement where the treatment is so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment not related to penological objectives. Williamson v. Stirling, 912 F.3d 154, 175-76 (4th Cir. 2018). To prevail on a substantive due process claim, a pretrial detainee must show the challenged treatment or conditions "were either '(1) imposed with an express intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred.'" Id. at 178 (quoting Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005)).

For its purposes here, taking the forecasts of evidence in the light most favorable to the Plaintiff, the Court assumes the truth of Plaintiff's version of the January 9, 2020 encounter with Officer Mathew and that Officer Mathew made a false claim about the encounter to Officer Williams. Even giving the Plaintiff the benefit of these assumptions, the relevant forecast of evidence is insufficient to sustain Plaintiff's substantive due process claim. Regardless of the conduct by Officer Mathew, who is not a defendant in this case, Defendant Watson acted on Mathew's claim of Plaintiff's threat of escape and violence. Defendant Watson reviewed Plaintiff's Case Notes,

12

Case 3:20-cv-00457-MR   Document 41   Filed 12/06/21   Page 12 of 16

which documented Plaintiff's threat to escape and to assault Officer Mathew just two days before Plaintiff was to be released from the DDU, and caused Plaintiff to remain in the Unit for an additional 19 days to ensure the safety and security of Jail staff and other residents. There is no forecast of evidence that Defendant Watson knew that Officer Watson's claim was false, if it was.

Because Plaintiff was not being punished for his threat of violence to Officer Mathew, but rather retained in the DDU for legitimate security reasons, no procedural due process concerns were implicated, and Defendant Watson was not constitutionally required to investigate the allegations. Even if Defendant Watson had investigated the incident, there is no forecast of evidence to indicate that the result would have been any different. Officer Mathew recounts his same version of the encounter in his affidavit before the Court now. [See Doc. 28-6]. There is no reason to believe or assume that he would have admitted to the falsity of his claim had Defendant Watson investigated it. As such, there is no reason to believe Defendant Watson would have acted any differently. This is particularly true considering that Plaintiff was housed in DDU in the first place because he possessed a homemade weapon in his cell. As such, it was incumbent on Jail staff to act with caution and care in releasing Plaintiff back to the general population. There is, therefore, no genuine issue for trial on Plaintiff's

13

Fourteenth Amendment claim.  For these same reasons, Plaintiff's claims for excessive punishment and deliberate indifference also fail.

The Court will, therefore, grant Defendant's motion for summary judgment on these claims.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendant Watson violated a constitutional right, Defendant Watson is entitled to

qualified immunity on Plaintiff's individual capacity claim against her. As such, the Court grants summary judgment on this ground as well.

### D. Gross Negligence

On initial review, the Court allowed Plaintiff's gross negligence claim to proceed without addressing it. [Doc. 11 at n. 2]. Because the Court is dismissing all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for gross negligence. See 28 U.S.C. § 1367(c)(3). The Court, therefore, will dismiss it without prejudice.

## V. CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is granted and Plaintiff's gross negligence claim is dismissed without prejudice to raising the claim in state court.

### O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 27] is **GRANTED** and this action is **DISMISSED with prejudice**, except for Plaintiff's claim for gross negligence, which is **DISMISSED without prejudice** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Surreply [Doc. 40] is **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: December 6, 2021

Martin Reidinger
Chief United States District Judge